IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY C. KVITKA and<br>NIKEL ENTERPRISES, INC.,<br><br>    Plaintiffs<br><br>    v.<br><br>THE PUFFIN COMPANY, L.L.C.,<br>KEITH KAONIS, and JOYCE<br>KEKATOS,<br><br>    Defendants | No. 1:06-CV-0858<br><br>JUDGE SYLVIA H. RAMBO |

**M E M O R A N D U M**

Before the court is Defendants' Spoliation Motion (Doc. 58.) This case arises within the context of the antique doll collecting community where email exchanges of contested origin led Antique Doll Collector magazine to disallow an antique doll collector to advertise in its publication. The court will now rule on the motion.

**I.     Background**

   **A.     Facts**[1]

Plaintiff Nancy Kvitka ("Kvitka") and Plaintiff Nikel Enterprises, Inc. ("Nikel") (collectively "Plaintiffs") purchase and sell antique French and German bisque-headed dolls made during the late Nineteenth and early Twentieth Century. (Doc. 1 ¶¶ 1–2, 13.) Antique Doll Collector[2] specializes in antique bisque dolls, the

---

[1] Certain facts taken from Plaintiffs' complaint (Doc. 1) are accepted as true for purposes of Defendants' motion.

[2] Defendant Puffin Company, LLC is the publisher of Antique Doll Collector, Defendant
(continued...)

only such magazine in the United States.  (*Id.* ¶ 19–20.)  Kvitka began placing advertisements in Antique Doll Collector in 1998, when the magazine debuted.  (*Id.* ¶ 22.)  According to Plaintiffs, shortly after the United Federation of Doll Clubs annual national convention, Defendants launched a campaign of character assassination "with the goal of harming Plaintiffs' business and forcing Plaintiffs out of Antique Doll Collector."  (*Id.* ¶ 49.)  The alleged campaign, culminated in the termination of "Plaintiffs' right to advertise" in Antique Doll Collector by letter dated August 23, 2005.  (*Id.* ¶ 59.)  The letter informed Kvitka that Antique Doll Collector would no longer run her advertisements because of "the many and various complaints" received about her business practices, which included "disparagement of other advertisers and other advertised merchandise that have appeared in the magazine, and picturing very rare and valuable dolls in your own advertisements that are not actually being offered for sale to the readers who may contact you."  (*Id.* Ex. A.)  Distraught, Kvitka fired back with a letter that commented:

> I pieced it together, with the help of some people who also think I got a royal screwing.  *Apparently, this entire thing has a lot to do with some emails*.  The funny thing about emails, Keith, that I have now learned, is that they can rather easily be tampered with, by anyone with minimal knowledge of how computers work."

(Doc. 58 Ex. B) (emphasis added).

Unable to resolve the conflict, Plaintiffs threatened suit, and Defendants responded to the threat with a letter dated August 30, 2005 that informed Plaintiffs' counsel that Puffin Company, LLC ("Puffin"), publisher of Antique Doll Collector, maintained a file with several written complaints from "dealer-

---

²(...continued)
Keith Kaonis is listed as Antique Doll Collector's Advertising and Creative Director, and Defendant Joyce Kekatos purchases and sells antique dolls.  (*Id.* ¶¶ 18, 21, 29.)

advertisers" and "collector-readers" of the magazine as well as fifteen pages of emails written by Kvitka that disparaged other dealers. (*Id.* Ex. A.) Shortly thereafter, Defendants' counsel sent a letter to Plaintiffs' counsel, which reminded Plaintiffs:

> In turn, I trust that you will dutifully inform your client, whether or not her previous attorneys at Stark & Stark have already done so, that her computer(s), particularly her computer hard drive(s), and all her accumulated email account message files going back several years must be safeguarded and preserved as potential material evidence. As you know, emails can be deleted, but they cannot be erased.

(*Id.* Ex. C.) On January 6, 2006, Plaintiffs filed a Praecipe to Issue Writ or Summons in the Court of Common Pleas of Dauphin County, Pennsylvania, and the prothonotary issued a Writ of Summons that same day. (*Id.* Ex. D.) During the course of that litigation, Plaintiffs requested that Defendants produce the written complaints and related emails, which they produced on February 28, 2006. (*Id.* at 3.)

In response to an interrogatory, Kvitka stated that she began having problems with her laptop (the "old laptop") during February 2006. (*Id.* Ex. E ¶ 11.) She described the problems in the following manner during her deposition testimony:

> Q. What was the problem that you were having that you contacted Mr. Tressler about in February of 2006 . . . .
>
> A. It was just doing totally wonky things, ridiculous things. It was becoming unusable.
>
> Q. Can you give me an example of—I mean I am not sure what that means what it was doing.
>
> A. It was difficult to receive emails, it was difficult to send emails, things were showing up in files that they shouldn't be showing up.

3

(*Id.* Ex. F at 10.) On or about February 27, 2006, Kvitka notified her computer technician, Chuck Tressler, of her computer problems, and Tressler—without examining the old laptop—informed her that she should purchase a new laptop. (*Id.* Ex. G at 51). Tressler ordered a new laptop for Kvitka on February 27, 2006, and Kvitka received email confirmation of this order on the old laptop, which she forwarded to Tressler via the old laptop. (*See id.* Ex. G at 45; Ex. F at 16–17, 44–45.) The new laptop was shipped on or about March 7, 2006 and was set up by Tressler within about one week. (*Id.* Ex. G at 16–17.) Sometime later in March 2006, Kvitka threw her old laptop into the trash. (*Id.* Ex. F at 29.) On March 16, 2006, during a conference regarding Plaintiffs' request for emails in Defendants possession, the commonwealth trial court judge inquired about the status of the original emails. (*Id.* at 6.) Plaintiffs failed to inform the judge that the old laptop had been discarded at the conference or in subsequent written correspondence, and instead opted to discontinue the pending state court litigation. (*Id.* at 6–7.) Plaintiffs, then, filed the instant federal suit on April 25, 2006, yet failed to inform Defendants that Kvitka had disposed of her old laptop and its hard drive until October 27, 2007. (*Id.* at 7.)

        Meanwhile, Kvitka maintained until January 2008—and her computer technician implied during deposition testimony—that no files or emails were recovered from her old laptop. (*Id.* at 8.) On January 14, 2008, Defendants moved for an order of inspection of Kvitka's new laptop, at which time Plaintiffs' counsel informed Defendants that "some" emails had been recovered from her old laptop and appeared on her new laptop. (*Id.*) Kvitka, while insisting that no data had been transferred from her old laptop to her new laptop, gave the following absurd

explanation as to how she located files and emails on her new laptop that she nor her computer technician ever transferred from her old laptop:

> Q. How did it come about that you found these documents? Was—
>
> A. I looked for them really hard, and I found them. At the time that this was going on, there was a lot of other things that were going on in my life, a lot. And I don't think that I quite understood how important it was for me to find them, plus I was real interested and real devastated mainly by the fact that I lost a lot of personal things, like I said, that had to do with my kids that were just real important to me. And [my attorney] kept saying to me, look, it's real important if you can find anything. So what I did was I sat down for hours. Also some of these things turned up in places that I didn't expect to find them, like I said. I mean it's a computer, it's not a person. There were things that for whatever reason showed up in files that they weren't supposed to show up in. I had a picture that showed up on my desktop. I had a file that showed up in a place that was an email. I had things that just showed up in places that they weren't supposed to show up. And so I went through every inch, every centimeter, every place that anything could be and I came up with the things that I then forwarded to my attorney.

(*Id.* Ex. F. at 18–19).

### B. Procedural History

In response to these events, Defendants submitted the instant Spoliation Motion along with supporting documents, seeking summary judgment dismissing Plaintiffs' claims as well as other remedies. (Docs. 58–59.) After the court granted multiple requests for extension of time, Plaintiffs filed a brief in opposition to Defendants' motion, on February 2, 2009. (Doc. 71.) Reply briefs were filed on February 6, 2009. (Docs. 73–74.) Accordingly, the motion is ripe for disposition.

## II. Discussion

Defendants argue that Kvitka's intentional discarding or destruction of her old laptop that contained email files directly related to her claims against them

5

prohibits them from defending against her claims and prosecuting their cross-claims, thereby entitling them to summary judgment as a sanction for spoliation of the evidence. As a general rule, "[a] party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D. Pa. 1996). Courts define "spoliation" as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Ogin v. Ahmed*, 563 F. Supp. 2d 539, 542 (M.D. Pa. 2008). When a party has destroyed evidence, courts may appropriately impose sanctions, including dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the "spoliation inference," which permits the jury to presume that "the destroyed evidence would have been unfavorable to the position of the offending party." *Id.* (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)). Courts must consider the facts and circumstances when fashioning an appropriate sanction, but ultimately the use and fashioning of sanctions appertain to "the inherent power of district courts . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Baliotis v. McNeil*, 870 F. Supp. 1285, 1289 (M.D. Pa. 1994) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks omitted)).

Courts contemplate the following "key considerations" before determining an appropriate sanction: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve

to deter such conduct by others in the future. *Schmid*, 13 F.3d at 79. There is no question that Kvitka intentionally discarded the laptop despite instructions not to dispose of it. Accordingly, the court will review each of these factors.

### A. Fault

Defendants argue that Kvitka acted in bad faith when she disposed of her old laptop, acting with the greatest degree of fault. The court agrees.

Kvitka acknowledged that "this entire thing has a lot to do with some emails," yet nevertheless discarded her old laptop that contained the emails relevant to her claims in direct defiance of instructions provided to her attorney. She discarded the laptop despite advice from her computer technician that skilled professionals could possibly recover files relevant to the litigation. (*See* Doc. 58 Ex. G at 19.) After discarding the old laptop, she failed to inform the judge presiding over her first lawsuit that she had engaged in such conduct despite the judge's direct inquiries and, instead, discontinued that litigation and filed the instant complaint in federal court. During the course of this suit, she has conducted herself in an evasive and confrontational manner during depositions and has attempted to mislead the court by withholding evidence that she now claims was transferred without explanation from her old laptop to her new laptop. When confronted by defense counsel regarding her deception, she refused to answer questions, concocted an outlandish story, and attempted to manipulate the facts of the case by substantively changing deposition testimony and an interrogatory answer with transparently evasive failure of recollection answers. She gave no explanation for these changes.

Plaintiffs challenge this by insisting that Kvitka's decision to throw out the old laptop amounted to an "innocent and routine effort[] to maintain her

business," and that "[t]he damage to the laptop hard drive, which was not caused by Plaintiffs, is the primary cause of the loss of electronic e-mail data." The court simply cannot accept that under the circumstances described above Kvitka's disposal of the old laptop constituted an "innocent and routine" effort to maintain her business. To the contrary, she testified that the old laptop was acting "wonky" and "ridiculous," but she could still send emails from the old laptop. She, nonetheless, ordered a new laptop in haste, disposing of the old laptop with knowledge that the emails could be retrieved or recovered and that she needed to preserve the old laptop's hard-drive. Kvitka has attempted to avoid this reality by manipulating testimony, yet she would have done well to heed the words of the great playwright Henrik Ibsen who wrote, "Many a man can save himself, if he admits he's done wrong and takes his punishment."[3]

### B. Prejudice

The court believes that Kvitka's intentional acts severely prejudiced Defendants. Plaintiffs' claims largely revolve around Puffin's cancellation of Plaintiffs' advertising in Antique Doll Collector. Defendants argue that Puffin took this action in response to emails sent by Kvitka as well as complaints from readers regarding those emails, and Plaintiffs suggest that she did not send any disparaging emails, but rather became the victim of a conspiracy, which included the fabrication and alteration of emails. As Kvitka admitted, the facts giving rise to her claims as well as Defendants' cross-claims have "a lot to do with some emails." Accordingly, to properly defend or prosecute this case, Defendants would need access to Kvitka's old laptop to inspect and investigate her email program and hard-drive.

---

[3] Henrik Ibsen, A Doll's House (J.W. Lowell Co. 1889) (1879).

Plaintiffs contend, however, that Kvitka's intentional disposal of the laptop does not prejudice Defendants because Plaintiffs subsequently produced the emails that Kvitka "found" on her computer. The court cannot infer that Plaintiffs produced all emails regarding the controversy, especially given Kvitka's conduct during the course of the litigation. Indeed, the court has perused the emails produced and finds that nearly all of the produced emails were received by Kvitka and only a few were sent by her, suggesting that she may have retained or transferred self-serving emails from her old laptop to her new laptop prior to discarding the old laptop in anticipation of litigation. Under such circumstances, the court cannot adopt the inference made by Plaintiffs.

### C. Sanctions

The court must, therefore, determine the appropriate sanctions to impose against Plaintiffs for the intentional destruction of a laptop that contained emails and other electronic data essential to the resolution of the case. "There is no rigid rule mandating a particular sanction upon a finding of improper destruction or loss of evidence." *Baliotis*, 870 F. Supp. at 1289. Rather, courts may consider a wide range of potential sanctions for spoliation, including (1) dismissal of a claim or granting judgment in favor of a prejudiced party, (2) suppression of evidence, (3) an adverse inference, called the spoliation inference, (4) fines, and (5) attorney's fees and costs. *Mosaid Techs., Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004). Nonetheless, the Court of Appeals has instructed that courts should exercise discretion in imposing sanctions with a view toward choosing "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid*, 13 F.3d at 79. "A sanction that has the

9

drastic result of judgment being entered against the party who has lost or destroyed evidence must be regarded as a last resort, to be imposed only if no alternative remedy by way of a lesser, but equally efficient sanction is available." *Baliotis*, 870 F. Supp. at 1289 (citation and internal quotation marks omitted).

Defendants seek dismissal of Plaintiffs' claims as well as summary judgment in their favor on their cross-claims or an adverse inference instruction. For the reasons described below, the court will dismiss Plaintiffs' claims and permit an adverse inference instruction on Defendants' cross-claims.

### 1.   Plaintiffs' Claims

The court will dismiss Plaintiffs' claims. As described above, Plaintiffs acted with the highest degree of fault, acting in bad faith. Kvitka destroyed the laptop necessary for Defendants to effectively challenge the validity of Plaintiffs' claims by throwing it in the trash. She engaged in this conduct, despite instruction from her attorney to maintain the old laptop, the hard-drive, and all relevant emails as well as instruction from her computer technician that data could be recovered from a damaged hard-drive. Moreover, Kvitka has been manipulative and evasive throughout the litigation in an apparent attempt to succeed on her claims and downplay the severity of her acts. These acts have severely prejudiced Defendants by stripping them of information necessary to defend against Plaintiffs' claims. Under such circumstances, the court has no other option but to dismiss Plaintiffs' claims with prejudice.

Plaintiffs, however, urge the court to impose a less drastic sanction, arguing that Kvitka merely acted negligently. The court disagrees with the characterization for the reasons just stated. Moreover, mere limiting instructions or

an adverse inference charge will not aid in defending against the claims. While Defendants have paper copies of certain emails allegedly sent by Plaintiff, they cannot verify the origin of the computer from which they were sent nor do they have access to all of the emails sent during that time, significantly reducing their ability to defend against the claims. Last, anything short of such a drastic remedy would encourage litigants to dispose of unfavorable evidence, hoping that they can overcome limiting instructions or an adverse inference by taking advantage of judges.

### 2. **Defendants' Cross-Claims**

The court, however, does not believe such a drastic remedy is necessary for Defendants' cross-claims, because Defendants have evidence that if combined with an adverse inference may persuade a jury to find in their favor on their fraud based claims. The Court of Appeals has explained that "[w]hen the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Ogin*, 563 F. Supp. 2d at 542 (citing *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). Courts will give an adverse inference instruction if (1) the evidence in question was within the party's control, (2) it appears that there has been actual suppression or withholding of the evidence, (3) the evidence destroyed or withheld was relevant to claims or defenses, and (4) it was reasonably foreseeable that the evidence would later be discoverable. *Id.* at 543.

Here, each element is satisfied. First, Kvitka testified that Plaintiffs retained the old laptop in their exclusive control. Second, Kvitka testified to

intentionally discarding the old laptop. Third, the destroyed emails and other evidence on the old laptop would have greatly assisted Defendants in prosecuting claims based on emails that Plaintiffs destroyed. Finally, Kvitka has admitted that she knew to preserve the emails because of their relevance, but still discarded the old laptop. Because the elements have been satisfied, the court will permit the adverse inference instruction and will preclude Plaintiffs from arguing that individuals tampered with the paper copies of emails possessed by Defendants.

### III.     Conclusion

For the foregoing reasons, the court will grant Defendants' spoliation motion and dismiss Plaintiffs' claims with prejudice and permit an adverse inference instruction as well as the additional restriction described above.

                                                    s/Sylvia H. Rambo
                                                    SYLVIA H. RAMBO
                                                    United States District Judge

Dated: February 13, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NANCY C. KVITKA and NIKEL ENTERPRISES, INC.,** : <br> : <br> **Plaintiffs** : <br> : <br> v. : <br> : <br> **THE PUFFIN COMPANY, L.L.C., KEITH KAONIS, and JOYCE KEKATOS,** : <br> : <br> **Defendants** : | **No. 1:06-CV-0858** <br><br> **JUDGE SYLVIA H. RAMBO** |

# O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendants Spoliation Motion (Doc. 58) is **GRANTED** in part and **DENIED** in part as follows:

(1) Plaintiffs' complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**.

(2) At the time of trial, the court will instruct the jury as to the proper adverse inference charge they may draw from Plaintiffs' destruction of the old laptop and will bar Plaintiffs from arguing that individuals have tampered with the paper copies of emails possessed by Defendants.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: February 13, 2009.